UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| KATHERINE SCHLICHTING, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>R.I.A. FEDERAL CREDIT UNION,<br><br>Defendant. | )<br>)<br>)<br>)<br>) Case No. 4:23-cv-04061-SLD-JEH<br>)<br>)<br>)<br>)<br>) |

ORDER

Before the Court is Plaintiff Katherine Schlichting's Motion to Remand and Memorandum of Law in Support of Motion to Remand, ECF No. 6. Defendant R.I.A. Federal Credit Union ("RIA") opposes the motion. Resp. Mot. Remand, ECF No. 8. For the reasons that follow, the motion to remand is GRANTED.

**BACKGROUND**

Schlichting brings this suit against RIA because of its fee practices. *E.g.*, Compl. ¶¶ 1–3, Not. Removal Ex. A, ECF No. 1-1 at 4–20. She and RIA "contracted for bank account deposit, checking, and debit card services." *Id.* ¶ 63; *see also* Terms and Conditions of Your Account ("Contract"), Mot. Dismiss Ex. B, ECF No. 2-2. When a customer uses, for example, her debit card to make a payment to a merchant, that merchant will submit that item for payment to credit unions and banks like RIA. *See, e.g.*, Compl. ¶¶ 18–20, 33. If the customer's account has insufficient funds, the request may not be fulfilled and a merchant could submit that same item for reprocessing, "potentially as soon as the next day." *Id.* ¶ 19 (quotation marks omitted).

Schlichting notes that the Contract allows RIA "to take certain steps when paying a check, electronic payment item, or [Automated Clearing House] item when the accountholder

1

does not have sufficient funds to cover it," namely either (1) "pay the item and charge a $29.50 fee," or (2) "reject the item and charge a $29.50 fee." *Id.* ¶ 21. But she alleges that RIA's routine practice is to "regularly assess[] two or more $29.50 fees on an item," *id.* ¶ 22, because it chooses to treat an item which was "initially rejected for insufficient funds . . . as a new and unique item that is subject to yet another fee." *id.* ¶ 14. She alleges that she has maintained a checking account with RIA at all relevant times, *id.* ¶ 5, and was assessed multiple overdraft ("OD") or insufficient funds ("NSF") fees on at least ten occasions, *id.* ¶¶ 8, 35–41. Whether the Contract allows RIA to do this, and a reasonable consumer's expectations, are disputed. *Compare id.* ¶¶ 27–34 (alleging this practice is unauthorized and unfair), *with* Mot. Dismiss 5, ECF No. 2 (arguing that Contract "provisions unambiguously and unequivocally disclose[] to and clearly inform[] Plaintiff of RIA's contractual right to assess and collect multiple NSF fees from Plaintiff for having to reprocess certain of Plaintiff's transactions that were initially rejected due to insufficient funds").

Schlichting filed her class action complaint in the Circuit Court for the Fourteenth Judicial Circuit of Illinois in and for Rock Island County. Compl. 1. She asserts three claims on behalf of herself and a proposed class: Count One alleging breach of contract, *id.* ¶¶ 62–72, Count Two alleging unjust enrichment, *id.* ¶¶ 73–78, and Count Three[1] alleging violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, *id.* ¶¶ 79–88 (citing 815 ILCS 505/1 (2022)). Her proposed class consists of "[a]ll customers of Defendant who had checking accounts with Defendant and who, during the applicable statute of limitations, were charged multiple fees on an item by Defendant," with some immaterial exceptions. *Id.* ¶¶ 50–52. She

---

[1] This count is labeled as Count Four in the complaint, but the complaint only asserts three counts. *See* Compl. 14. The Court refers to it as Count Three for the sake of clarity.

alleges that her suit is properly maintainable as a class action under Illinois law. *Id.* ¶¶ 54–61 (citing 735 ILCS 5/2-801 (2022)).

RIA timely removed this case to federal court pursuant to 28 U.S.C. §§ 1441(a), 1446.[2] Not. Removal ¶¶ 5–7, ECF No. 1. RIA invokes the Court's jurisdiction under the Class Action Fairness Act ("CAFA") portion of 28 U.S.C. § 1332. *See id.* ¶ 9. Section 1332(d) requires that the proposed class have at least 100 members, that the amount in controversy be greater than $5,000,000, and that there be minimal diversity between the parties. *See Schutte v. Ciox Health, LLC*, 28 F.4th 850, 853 (7th Cir. 2022) (citing 28 U.S.C. § 1332(d)). Schlichting is a citizen of Iowa and alleges that RIA maintains its principal place of business in Illinois, Compl. ¶¶ 5–6, but RIA responds that "RIA is a credit union that is federally chartered, incorporated, and maintains its principal place of business in Iowa." Not. Removal ¶ 11. Schlichting filed a motion to remand, disputing that RIA's removal was proper because it failed to meet its burden of sufficiently establishing the amount in controversy. *E.g.*, Mot. Remand 2. RIA counters that its notice of removal was sufficient and provides additional calculations which purportedly establish the requisite amount in controversy. *E.g.*, Resp. Mot. Remand 5. The Court stayed briefing on RIA's pending motion to dismiss while it considered Schlichting's motion to remand. *See* May 15, 2023 Text Order.

**DISCUSSION**

"[T]he removing party bears the burden of establishing the general requirements of CAFA jurisdiction . . . ." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 618 (7th Cir. 2012). "If the party opposing federal jurisdiction contests the amount in controversy, the

---

[2] "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441; *see also* 28 U.S.C. § 1453(b) (stating there is no home-state exception for removal of class actions)

proponent must prove those jurisdictional facts by a preponderance of the evidence." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011) (quotation marks omitted). The Seventh Circuit has clarified that:

> [T]he removing party's burden is to show not only what the stakes of the litigation *could be,* but also what they *are* given the plaintiff's actual demands. . . . The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks.

*Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (alterations in original) (quotation marks omitted). "The party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties. This burden thus is a pleading requirement, not a demand for proof." *Blomberg*, 639 F.3d at 763 (citations omitted). "A good-faith estimate is acceptable if it is plausible and adequately supported by the evidence." *Id.* "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Spivey*, 528 F.3d at 986 (citations omitted).

Acceptable sources of information include contentions interrogatories, admissions in state court, calculations based on the complaint's allegations, reference to the plaintiff's informal estimates or settlement demands, or affidavits from the defendant's employees or experts regarding the cost to satisfy the plaintiff's demands. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541–42 (7th Cir. 2006). For example, the Telephone Consumer Protection Act ("TCPA") provides for statutory damages of "$500 per fax," which may be trebled upon showing the violations were willful or knowing, and the Seventh Circuit found that the defendant's concession regarding the number of faxes sent combined with the TCPA's statutory damages provisions was sufficient for CAFA's amount-in-controversy requirement. *Brill v.*

*Countrywide Home Loans, Inc.*, 427 F.3d 446, 447, 449 (7th Cir. 2005). Conversely, the defendant's amount-in-controversy allegations in another case involving claims under the TCPA were insufficient because the defendant failed to provide sufficient "information regarding the number of faxes that [the defendant's] agent sent." *G.M. Sign Inc. v. Silverman Enters.*, No. 09 C 965, 2009 WL 10701000, at *1–2 (N.D. Ill. July 23, 2009). Although the plaintiff had alleged that "thousands of persons received the fax at issue . . . that allegation d[id] not necessarily demonstrate that [a sufficient number of faxes were] at issue." *Id.* at *2.

The primary point of dispute here is RIA's estimate of the potential class size. RIA's notice of removal's arguments regarding the amount in controversy span just one paragraph:

> Specifically, here, Plaintiff alleges that she alone was assessed and charged "multiple" $29.50 fees on at least 10 separate occasions. *See* Compl. at paras. 35-41. This necessarily implies, at a minimum, two charges per occasion, but could certainly include more. In turn, Plaintiff "estimates the number of members in the [proposed] Class to be in the thousands." *See* Compl. at para. 55. Lastly, here Plaintiff is seeking for the Court to "[a]ward Plaintiff and the Class *actual, statutory, and punitive damages*." *See* Compl. at 16 ("PRAYER FOR RELIEF") (emphasis added). Accordingly, when the various relief sought is considered and aggregated in relation to the potential class size, the $5,000,000 amount in controversy requirement of 28 U.S.C. § 1332(d)(2) has been met in this case.

Not. Removal ¶ 14 (alterations in original). Schlichting argues that "'[t]housands' can refer to two thousand as easily as it can refer to ten thousand," and that RIA must "submit actual data and underlying factual support," and that the "evidence necessary to prove the amount in controversy is within [RIA's] possession and control." Mot. Remand 5. RIA counters that the standards articulated in *Blomberg* and *Sadowski* do not require "a precise calculation and valuation of Plaintiff's putative class action case," and instead that its calculations need only show that "it is more than plausible that the stakes involved in Plaintiff's putative class action

5

exceed $5,000,000." Resp. Mot. Remand 4–5. RIA insists that it need not give up this information which Schlichting would like to have "at this stage of the litigation." *Id.* at 4.[3]

Schlichting directs the Court to cases involving similar estimations of class size which courts found to be insufficient. Mot. Remand 5–8. For example, in a case of sales-commission contracts, the plaintiff explained how the sale of "a 12-month contract for services that cost $120,000," would work out to a commission of "$400 per month." *Fongers v. CareerBuilder, LLC*, No. 19-cv-7966, 2020 WL 12630537, at *1 (N.D. Ill. Oct. 21, 2020) (quotation marks omitted). The defendant built upon this explanatory paragraph by including "an affidavit from [the d]efendants' manager of human resources, who reviewed [its] personnel records and identified 218 employees who appeared to" be class-eligible, but that affidavit "was silent as to the amount of sales that were typical by a representative during the period," and the defendant arbitrarily used an estimate that a representative would "close[] five such contracts," as the basis for its amount-in-controversy calculation. *Id.* at *2 (quotation marks omitted). The court found that the defendant's "reliance on the explanatory paragraph, uncoupled with any additional evidence or concrete allegations in the complaint, [wa]s insufficient to show by a preponderance of the evidence that the amount in controversy [wa]s met." *Id.* at *3. The unacceptable lack of support was "magnified by the fact that [the d]efendants [we]re presumably in possession of the information that would establish that the amount in controversy [wa]s met," such as a representative number of eligible sales. *Id.* at *4.

---

[3] RIA incorrectly asserts that Schlichting could stipulate "that Plaintiff and the putative class are seeking less than $5,000,000 in damages." Resp. Mot. Remand 4 n.2. A class-action plaintiff's stipulation "prior to certification of the class, that he, and the class he seeks to represent, will not seek damages that exceed $5 million in total," does not preclude jurisdiction under CAFA "because a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 590, 593 (2013).

Similarly, a court considered the sufficiency of class-size allegations in a case alleging that the defendant committed to real-estate closing dates with no intention of closing on those dates. *Styx v. Wells Fargo Bank, N.A.*, No. 09 C 5960, 2010 WL 1253971, at *1 (N.D. Ill. Mar. 24, 2010). An affidavit which asserted a number of at-issue transactions "[b]ased on [an] inquiry of certain employees [with knowledge], *id.* at *2 (first and third alterations in original) (quotation marks omitted), was both inadmissible hearsay and an unsupported "bare conclusion," *id.* at *2, 5. The Seventh Circuit has also found that an allegation that a class included "potentially thousands of class members," without more, was "not enough . . . to plausibly infer that the amount in controversy . . . [was] actually greater than $5 million." *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 733 (7th Cir. 2021) ("[A]ny inference that the amount in controversy exceeds $5 million would be entirely speculative.").

Considering these decisions, RIA's notice of removal is inadequate. The notice of removal provides no evidentiary affidavits on the amount of controversy and relies solely on Schlichting's complaint. RIA is entitled to rely on Schlichting's complaint, *see Sadowski*, 441 F.3d at 541, but the calculations from the complaint's allegations still must be plausible and supported by some competent evidence or admissions, *see Blomberg*, 639 F.3d at 763. Schlichting's complaint does not specify how many people are in the class, and RIA extrapolates from the word "thousands" to an unspecified many thousands. Not. Removal ¶ 14 (quoting Compl. ¶ 55). Without any other support—such as how many customers RIA services, let alone how many were assessed an OD or NSF fee during the relevant time—there is no evidentiary basis to conclude that Schlichting's allegations plausibly support a sufficiently large class to satisfy the amount-in-controversy requirement. *See Ware*, 6 F.4th at 733; *Brill*, 427 F.3d at 449; *Silverman Enters.*, 2009 WL 10701000, at *2. This lack of support is magnified by the fact that

7

this information is within RIA's control. *See Brill*, 427 F.3d at 447–48 ("When the defendant has vital knowledge that the plaintiff may lack, a burden that induces the removing party to come forward with the information—so that the choice between state and federal court may be made accurately—is much to be desired."); *Fongers*, 2020 WL 12630537, at *4.

RIA's response opposing the motion to remand attempts to provide additional support, but still falls short. Resp. Mot. Remand 5. It starts with the faulty assumption that "Plaintiff, individually, is claiming *a minimum* of $590 of allegedly improperly assessed and collected NSF fees as compensatory damages," such that the class need only contain "approximately 8,475 RIA members each claiming $590 in similar damages to reach the $5,000,000 threshold." *Id.* (citing Compl. ¶¶ 35–41). That portion of Schlichting's complaint describes ten instances when she was charged multiple fees of $29.50, which multiplied by twenty results in RIA's figure of $590. *See* Compl. ¶¶ 35–41. But Schlichting is not disputing that RIA could charge OD/NSF fees, rather, she alleges that RIA improperly assessed *multiple* fees on what she argues should be considered the same item. *See, e.g.*, Compl. ¶¶ 28, 42 ("Defendant promises that one fee will be assessed on an item, and this term must mean all iterations of the same instruction for payment. As such, Defendant breached the contract when it charged more than one fee per item."). A proper understanding of Schlichting's complaint is that she seeks $295 in compensatory damages, such that the class would need to include 16,950 RIA members for RIA to carry its burden. But again, the more fundamental issue is that RIA provides no evidence regarding how many customers were charged OD/NSF fees, such that the Court could only rely on conjecture regarding the proper size of the purported class to infer that RIA has satisfied the amount-in-controversy requirement. *See Ware*, 6 F.4th at 733.

8

RIA attempts to bolster this showing by pointing to the availability of punitive damages, injunctive relief, and attorneys' fees. Resp. Mot. Remand 5. RIA does not attempt to quantify the amount of fees or cost of injunction-compliance, *cf. Blomberg*, 639 F.3d at 764 (noting the defendant could have done more to support its amount-in-controversy arguments, such as "estimating the attorneys' fees and punitive damages recoverable in unpaid wage cases"), but does suggest a conservative punitive-to-compensatory ratio of 1:1 to show that the class could be even smaller and still satisfy CAFA's requirements, Resp. Mot. Remand 5. The Court need not linger on this point, because without a plausible base of compensatory damages, the potential of punitive damages is irrelevant. *See Bordelais v. Bordelais*, No. 20 C 01709, 2021 WL 6752290, at *2 (N.D. Ill. Sept. 21, 2021) ("[S]ince the amended complaint fails to plausibly allege any amount of actual damages, there is no basis on which to allege punitive damages."); *Fiddler v. AT & T Mobility, LLC*, No. 08 C 416, 2008 WL 2130436, at *2 (N.D. Ill. May 20, 2008) (reaching a similar conclusion in a case removed under CAFA). RIA fails to make even a conclusory assertion as to the costs of attorneys' fees and injunction-compliance, and the Court will not speculate as to those amounts. *Cf. Ware*, 6 F.4th at 733

RIA's final bit of evidence is the approval of a $5.2 million settlement in another case. *See* Resp. Mot. Remand 6 (citing *Coleman-Weathersbee v. Mich. State Univ. Fed. Credit Union*, No. 5:19CV11674, 2020 WL 8816097 (E.D. Mich. Jul. 29, 2020)). This could work, provided that the comparison is supported by "evidence that the potential recovery in both [cases] is comparable." *See Blomberg*, 639 F.3d at 763–64 (finding similar allegations in another case involving the same defendant were useful comparators). RIA argues that *Coleman-Weathersbee* is a good comparison because it "involved at least one class of members that were assessed more than one NSF fee on a single payment transaction that was not refunded," which "are precisely

the allegations at issue in Plaintiff's case." Resp. Mot. Remand 6. RIA acknowledges that *Coleman-Weathersbee* also involved "allegations which are not at issue in Plaintiff's case" regarding class members "who were also assessed and paid an overdraft fee on a Sufficient Funds Damage Transaction," but RIA states that "if one reasonably assumes that the settlement amount evenly represents the two broad category of claims across those settlement classes, then that would lead to a valuation applicable to the multiple NSF fee class of $2,500,000." *Id.* Considering a 1:1 ratio of compensatory to punitive damages, RIA argues that this settlement sufficiently supports its estimate of the amount in controversy. *Id.*

The Court need not make any such assumption, because the settlement did not evenly divide its award across those two categories. *See* Order Granting Final Approval Class Action Settlement ¶ 3, *Coleman-Weathersbee v. Mich. State Univ. Fed. Credit Union*, Case No. 5:19-cv-11674-JEL-DRG (E.D. Mich. July 29, 2020) (certifying four—not two—subclasses). Only one of the subclasses, "Multiple NSF Fees on a Single Item Class," dealt with allegations concerning members who were charged multiple NSF fees on a single payment transaction. *Id.*[4] Just $500,000 of the $5,201,096 settlement fund was allocated to the "Multiple NSF Fees on a Single Item Class." Settlement Agreement and Release 8, *Coleman-Weathersbee v. Mich. State Univ. Fed. Credit Union*, 5:19-cv-11674-JEL-DRG (E.D. Mich. June 12, 2020), ECF No. 30-2. This at best shows that a tenth of the amount necessary for the Court to exercise jurisdiction is at issue, and only speculation and conjecture could allow the Court to conclude that the amount-in-

---

[4] Specifically, the "Multiple NSF Fees on a Single Item Class" was defined as "[t]hose members of Defendant who, from and including June 6, 2013, through December 9, 2019, were assessed more than one NSF fee on a single payment transaction that was not refunded." Order Granting Final Approval Class Action Settlement ¶ 3, *Coleman-Weathersbee v. Mich. State Univ. Fed. Credit Union*, Case No. 5:19-cv-11674-JEL-DRG (E.D. Mich. July 29, 2020), ECF No. 33.

10

controversy requirement has been satisfied. In sum, RIA has failed to carry its burden regarding the amount in controversy, and the Court cannot exercise jurisdiction under CAFA.

All that remains is a decision regarding whether RIA should get another bite at the jurisdictional apple. When a case does not allow a federal court to exercise jurisdiction, remand is the proper course of action. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." (emphasis added)). Some courts choose to order limited jurisdictional discovery when a motion to remand reveals jurisdictional flaws. *See, e.g.*, *Craig v. Cornerstone Trading Grp., LLC*, No. 1:23-cv-01575-TWP-MJD, 2024 WL 62804, at *2 (S.D. Ind. Jan. 5, 2024) (citing *Dancel v. Groupon, Inc.*, 940 F.3d 381, 385–86 (7th Cir. 2019)) (taking motion to remand under advisement and allowing the defendant to conduct discovery regarding citizenship of putative class members where the defendant failed to adequately allege the existence of minimal diversity). Other courts choose to remand when the defendant's response to a motion to remand fails to cure those jurisdictional flaws. *See Halim v. Charlotte Tilbury Beauty Inc.*, No. 23 CV 94, 2023 WL 3388898, at *2, 11 (N.D. Ill. May 11, 2023); *City of Fishers v. Netflix, Inc.*, 501 F. Supp. 3d 653, 655, 662 (S.D. Ind. 2020), *aff'd sub nom. City of Fishers v. DIRECTV*, 5 F.4th 750 (7th Cir. 2021); *Fongers*, 2020 WL 12630537, at *1, 4; *Anderson v. Hackett*, 646 F. Supp. 2d 1041, 1044, 1055 (S.D. Ill. 2009); *Silverman Enters.*, 2009 WL 10701000, at *2; *Fiddler*, 2008 WL 2130436, at *1; *Coy Chiropractic Health Ctr., Inc. v. Travelers Cas. & Sur. Co.*, No. 06-cv-678-DRH, 2007 WL 2122420, at *1, 9 (S.D. Ill. July 20, 2007).

As an alternative to remand, Schlichting suggested jurisdictional discovery would be appropriate. *See* Mot. Remand 9. RIA asserted that Schlichting wanted "RIA to provide a precise calculation of the potential class size and a precise valuation of the class's claims," but

11

stated that those disclosures were not "required of RIA at this stage of litigation." Resp. Mot. Remand 7. RIA acknowledged that it could have done more to show that jurisdiction in this Court was secure but declined to do so. *See id.* (citing *Blomberg*, 639 F.3d at 764). RIA instead asked the Court to deny Schlichting's motion "in its entirety." *Id.* RIA had two opportunities to demonstrate removal was proper: first in its notice of removal, and then its response to the motion to remand. RIA declined to provide information regarding OD/NSF fees, despite that information being within its control. Because RIA—the proponent of federal-court jurisdiction—failed to meet its burden, the Court remands for lack of jurisdiction.

## CONCLUSION

Plaintiff Katherine Schlichting's Motion to Remand and Memorandum of Law in Support of Motion to Remand, ECF No. 6, is GRANTED. Defendant R.I.A. Federal Credit Union's Motion to Dismiss Class Action Complaint, ECF No. 2, is MOOT. The case is REMANDED to the Circuit Court for the Fourteenth Judicial Circuit of Illinois in and for Rock Island County. The Clerk is directed to close the case.

Entered this 4th day of March, 2024.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
